[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13752

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSE RAUL PAREDES ARISPE,
a.k.a. Mauricio Justiniano,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20582-FAM-1

_____

Before JORDAN, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Jose Paredes Arispe appeals his 46-month sentence for conspiracy to smuggle goods outside the United States and for attempted export of goods in violation of the Export Control Reform Act. He argues that the district court abused its discretion in imposing its sentence when it rejected his request for a downward variance based on Application Note 1 to U.S.S.G. § 2M5.2. Specifically, he argues that he attempted to unlawfully export commercially available firearm parts, not any of the far more dangerous items listed in that provision. He also contends that the court improperly applied the Sentencing Guidelines with a binding effect because it did not weigh all of the 18 U.S.C. § 3553(a) factors, as it was required to do. After careful review, we affirm.

## I.    Background

Arispe was indicted by grand jury, along with his codefendant Eduardo Justiniano Peinado, for conspiracy to smuggle goods outside the United States, in violation of 18 U.S.C. § 371 ("Count 1"); attempted smuggling of goods outside the United States, in violation of 18 U.S.C. § 554(a) ("Count 2"); and attempted export of goods in violation of the ECRA and the Export Administration Regulations ("EAR"), in violation of 50 U.S.C. § 4819 and 15 C.F.R. Part 730 et seq. ("Count 3"). Arispe pleaded

guilty to Counts 1 and 3, in exchange for the dismissal of Count 2, pursuant to a plea agreement.

The presentence investigation report ("PSI") described Arispe's offense conduct as follows. From approximately February 2022 to June 2022, Arispe and Peinado, who were citizens of Bolivia, attempted to export "firearms and related commodities," including "detachable magazines with a capacity of 17 to 50 rounds," "receivers (frames)," and "complete breech mechanisms," from the United States to Bolivia without obtaining the required licenses from the United States Department of Commerce.

Specifically, on May 17, 2022, Peinado contacted TRC Transport, a freight forwarder with its principal place of business in Miami-Dade County, Florida, stating that his brother would be dropping off tractor parts for a shipment to Bolivia. Then, on May 19, 2022, Arispe obtained weapon parts from Daytona Tactical, an online firearms parts distributor with its principal place of business in Holly Hill, Florida, which included "(a) 40 AR-15 upper receivers; (b) 15 80% AR-15 lower receivers; (c) 80 AR-15 magazines; (d) 36 AR-15 trigger assemblies/parts kits; and (e) 40 AR-15 pistol grips." Arispe also purchased a number of items from Home Depot, which he used to conceal the firearm parts. The following day, Arispe delivered a package to TRC Transport, which he stated contained tractor parts, but which in fact contained the firearm parts.

On May 24, 2022, TRC Transport discovered the firearm parts underneath the Home Depot items in a false-bottom

compartment during a routine inspection and contacted law enforcement, who recovered the parts and discovered that Arispe and Peinado did not have the required license to export them. Law enforcement also confirmed that the parts had been purchased by Peinado from Daytona Tactical using wire transfers sent by two individuals with addresses in Bolivia. On May 25, 2022, an undercover agent posing as an employee of the airline utilized by TRC Transport contacted Arispe and told him "that he saw rifles in the box that was dropped off by [Arispe]." Arispe admitted that he did not have the required license to export the firearms parts, and he and Peinado, who was then in Bolivia, offered a bribe of $500 to the agent if he would allow the delivery to proceed. On June 1, 2022, Arispe caused a wire transfer of $400 to be sent from an individual in Bolivia to a bank account provided by the undercover agent. The PSI stated that law enforcement recovered a total of "131 firearms."

At sentencing, the district court determined that Arispe's total offense level was 23, which resulted in a guideline range of 46 to 57 months' imprisonment. Arispe requested a downward variance, noting that Application Note 1 to § 2M5.2 stated that it assumed that the offense conduct "was harmful or had the potential to be harmful to a security or foreign policy interest of the United States," and that, in circumstances where that was not the case, a downward departure might be warranted. He asserted that his offense involved the export of firearms parts that were available for sale to the general public and were substantially different and less dangerous than the example items listed in

Application Note 1, which included "military aircraft, helicopters, artillery, shells, missiles, [and] rockets." He also explained that he was merely "an errand boy," and that "[h]is participation and his knowledge [wa]s limited to being told, you know, where to go and what to do."

The court stated that it considered all of the 18 U.S.C. § 3553(a) factors after hearing the parties' arguments. It stated that there was enough reason to sentence at the low end of the guideline range, but not to go beneath it. It then rejected Arispe's argument that shipping components of rifles was less dangerous than shipping the items described in the Application Note. Specifically, it stated

> [a]dmittedly, some items could be more dangerous, of course. Helicopters can be used for the good and for the bad. That could be argued either way. Artillery shells, shells without the manner of sending the shells are probably not useful, and rockets and missiles certainly seem more dangerous than guns, for better or for worse, depending on your views of what should be available to the general public.

It sentenced Arispe to 46 months' imprisonment for both counts, to run concurrently with each other, followed by a term of 3 years' supervised release for both counts, also to run concurrently with each other. Arispe objected to the sentence on the ground that a downward departure, as described in the Application Note, was warranted, and that a two-point reduction was also warranted

as an appropriate variance because he was a zero-point offender, which the court overruled. Arispe appealed.

## II.    Discussion

On appeal, Arispe argues that the district court abused its discretion when it rejected his request for a downward variance based on Application Note 1 to U.S.S.G. § 2M5.2, as he had attempted to unlawfully export commercially available firearm parts, not any of the far more dangerous items listed in that provision. He also contends that the court improperly applied the Sentencing Guidelines with a binding effect because it did not weigh all of the 18 U.S.C. § 3553(a) factors, as it was required to do.

When reviewing for substantive reasonableness, we review the sentence imposed by the district court under an abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). The appellant bears the burden of showing that his sentence is unreasonable considering the totality of the record and the § 3553(a) factors. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). As a result of the "substantial deference district courts are due in sentencing," we will give the district court's "decisions about what is reasonable [a] wide berth and almost always let them pass." *Irey*, 612 F.3d at 1225.

In evaluating substantive reasonableness, the relevant § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the

offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant"; (3) "the kinds of sentences available"; (4) the sentencing range; and (5) "the need to avoid unwarranted sentencing disparities among defendants with similar records" convicted of similar conduct. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(4), (a)(6); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

We have emphasized that "we must give due deference to the district court" to consider and weigh the § 3553(a) sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotations omitted). The district court does not have to give all the factors equal weight and is given discretion "to attach great weight to one factor over others." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotation omitted). Though the district court must consider all the § 3553(a) factors, "[a]n acknowledgement the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." *Gonzalez*, 550 F.3d at 1324. Along with the § 3553(a) factors, the district court should also consider the relevant conduct and particularized facts of the defendant's case and the sentencing guidelines. *Rosales-Bruno*, 789 F.3d at 1259–60. The district court maintains discretion to give heavier weight to any of the § 3553(a) factors or a combination of factors than to the sentencing guidelines. *Id.* at 1259.

The district court also has wide discretion to decide whether the § 3553(a) factors justify a variance. *Gall*, 552 U.S. at 51. In

imposing a variance, the district court can contemplate conduct already considered when calculating the guideline range. *United States v. Johnson*, 803 F.3d 610, 619 (11th Cir. 2015). And "[one] indicator of a reasonable sentence[]" is that the sentence is "well below the statutory maximum" for the crime. *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

The commentary for the provision of the Sentencing Guidelines for offenses relating to the exportation of arms without a valid license states that the items that are governed by the licensing system administered by the United States Department of Commerce include "military aircraft, helicopters, artillery, shells, missiles, rockets, bombs, vessels of war, explosives, military and space electronics, and certain firearms." U.S.S.G. § 2M5.2, comment. (n.1). It continues, "[t]he base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States. In the unusual case where the offense conduct posed no such risk, a downward departure may be warranted." *Id.*

Applying those principles here, the district court did not abuse its sentencing discretion. The district court stated that it had considered all of the § 3553(a) factors after hearing the parties' arguments. Although the court did not go into great detail as to how it specifically weighed each of the relevant factors, its statement that it had considered all of the factors and the parties' arguments was sufficient to show that it did not abuse its discretion by failing to consider any relevant factors. *See Gonzalez*, 550 F.3d at

1324 ("An acknowledgment the district court has considered the defendant's arguments and the § 3553(a) factors will suffice."). Similarly, the fact that it did not explicitly mention all of the mitigating factors raised by Arispe does not suggest that it failed to consider them because it was not required to explicitly mention each mitigating factor. *See id.* The district court did not need to give equal weight to all factors and was permitted in its discretion to weigh them as it saw fit. *See id.*; *Rosales-Bruno*, 789 F.3d at 1254. And there is nothing in the record to indicate that the district court applied the Guidelines as binding. Nor is there anything in the district court's reasoning that suggests it considered any impermissible factors.

Additionally, the record shows that the court considered and rejected Arispe's argument that shipping components of rifles was less dangerous than shipping the items described in the commentary to § 2M5.2. Whether or not the commentary to § 2M5.2 was a basis for a downward variance was a question within the district court's discretion relating to its assessment of the nature and circumstances, as well as the seriousness of the offense under § 3553(a). *See Gall*, 552 U.S. at 51. Further, the fact that Arispe's 46-month sentence is within the guideline range and well below the statutory maximum of 25 years supports the conclusion that it is substantively reasonable. *See Dougherty*, 754 F.3d at 1362.

Accordingly, we affirm the district court's sentence as substantively reasonable.

**AFFIRMED.**